## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TODD BENN**                                                **CIVIL ACTION**

**VERSUS**                                                   **NO.  12-2175**

**N. BURL CAIN**                                             **SECTION "N"(2)**


## ORDER AND REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I deny plaintiff's pending motion to amend, Record Doc. No. 7; I recommend that plaintiff's motion to stay these proceedings, Record Doc. No. 7, be **DENIED**; and I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Todd Benn, is currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On July 6, 1995, Benn was indicted by a grand jury in St. James Parish and charged with the second degree murder of Brent Lee.[3]  The facts of the case as determined at trial were summarized by Louisiana Supreme Court Justice Bernadette Johnson in her dissenting opinion after direct appeal:

> Brent Lee (hereinafter "victim") was shot to death on May 20, 1995 while standing with a large crowd in front of Club Paradise in St. James Parish, Louisiana. He was struck by a stray bullet during a shoot out between Macon Clark (hereinafter "Clark") and Todd Benn (hereinafter "Defendant"). Defendant and Clark were shooting at each other simultaneously when the victim was killed. Witnesses to the shooting stated that Clark was firing two guns and Defendant was firing one gun.

State v. Benn, 735 So.2d 629, 629 (La. 1999) (Johnson, J. dissenting); State Record Supplemental Volume 2 of 5, Louisiana Supreme Court Order, 99-KO-0191, page 2 (Johnson, J. dissenting), June 18, 1999.

Benn was tried by a jury on September 10 and 11, 1996, and was found guilty as charged of second degree murder by a 10 to 2 vote of the jury.[4]  At a hearing on July 14, 1997, the state trial court denied Benn's motions for a new trial based on insufficient

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 5, Indictment, 7/6/95.

[4]St. Rec. Vol. 2 of 5, Trial Minutes, 9/10/96; Trial Minutes, 9/11/96; Trial Transcript, 9/10/96; St. Rec. Vol. 3 of 5, Trial Transcript (continued), 9/10/96; Trial Transcript, pp. 69-70, 9/11/96.

evidence.[5]   After a hearing on August 11, 1997, the court also denied Benn's pro se

motion for arrest of judgment based on an allegedly defective indictment.[6] On November

12, 1997, the state trial court sentenced Benn to serve life in prison at hard labor without

benefit of parole, probation or suspension of sentence.[7]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Benn's appointed

counsel argued that the evidence at trial was insufficient to support the verdict.[8]

Specifically, she argued that there was no evidence of specific intent to kill; at best, the

evidence established that Benn acted in the heat of blood after hearing that Clark shot his

brother.  Benn filed a pro se supplemental brief in which he also argued insufficiency of

the evidence to prove that he was the actual shooter.[9]  Benn argued that the evidence

proved that many other people were shooting guns at the same time, including Clark.  He

also argued that the entry of the shot into the victim's left arm and side proved that he

could not have been the shooter since he was facing the victim.

---

[5]St. Rec. Vol. 2 of 5, Minute Entry, 7/14/97; Motion for New Trial, 12/3/96; Supplemental and Amending Motion for New Trial, 1/15/97; St. Rec. Vol. 3 of 5, Hearing Transcript, 7/14/96.

[6]St. Rec. Vol. 2 of 5, Minute Entry, 8/11/97; Motion for Arrest of Judgment, 7/18/97; St. Rec. Vol. 3 of 5, Hearing Transcript, 8/11/97.

[7]St. Rec. Vol. 2 of 5, Sentencing Minutes, 11/12/97; Reasons for Sentencing, 11/12/97; St. Rec. Vol. 3 of 5, Sentencing Transcript, p. 7, 11/12/97.

[8]St. Rec. Vol. 1 of 5, Appeal Brief, 98-KA-395, undated.

[9]St. Rec. Vol. 1 of 5, Pro Se Supplemental Brief, 98-KA-395, undated.

On December 16, 1998, the Louisiana Fifth Circuit affirmed the conviction and sentence in an unpublished opinion, finding no merit to either claim.[10] Benn sought review in the Louisiana Supreme Court, and the court denied his application without stated reasons on June 18, 1999, with Justice Johnson indicating in dissent that she would grant the writ.[11] The court also denied Benn's application for reconsideration, although Justice Johnson would have granted the request.[12]

Benn's petition for writ of certiorari filed in the United States Supreme Court was denied on January 24, 2000.[13] The Supreme Court also denied his request for rehearing on April 17, 2000.[14] Benn's conviction is deemed final on January 24, 2000, the date of denial of his petition for writ of certiorari, not the request for rehearing. Howland v. Quarterman, 507 F.3d 840, 843 (5th Cir. 2007) ("It is beyond dispute that a state petitioner's criminal conviction is 'final for purposes of AEDPA's one-year limitations

---

[10]State v. Benn, 735 So.2d 143 (La. App. 5th Cir. 1998) (Table); St. Rec. Vol. 4 of 5, 5th Cir. Opinion, 98-KA-395, pp. 1, 2, 4, 12/16/98. The court also ordered the trial court to notify Benn of the delays for filing for post-conviction relief.

[11]State v. Benn, 735 So.2d at 629; St. Rec. Suppl. Vol. 2 of 5, La. S. Ct. Order, 99-KO-0191, 6/18/99; La. S. Ct. Writ Application, 99-K)-0191, 1/22/99 (postmarked 1/12/99); St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 99-KO-0191, 1/22/99.

[12]State v. Benn, 747 So.2d 558 (La. 1999); St. Rec. Suppl. Vol. 2 of 2, La. S. Ct. Order, 99-KO-0191, 9/17/99; Application for Reconsideration, 99-KO-0191, 7/20/99.

[13]Benn v. Louisiana, 528 U.S. 1140 (2000); St. Rec. Suppl. Vol. 2 of 2, U.S. Supreme Court Letter, 99-7165, 1/24/00; U.S. S.Ct. Letter, 99-7165, 11/29/99 (showing petition filed October 18, 1999).

[14]Benn v. Louisiana, 529 U.S. 1083 (2000); St. Rec. Suppl. Vol. 2 of 2, U.S. Supreme Court Letter, 99-7165, 4/17/00.

period, when his petition for certiorari [is] denied by the Supreme Court,' not when his petition for rehearing is denied or his time to file for rehearing expires." (citing <u>Giesberg v. Cockrell</u>, 288 F.3d 268, 271 (5th Cir. 2002)); <u>see</u> <u>Medley v. Thaler</u>, 660 F.3d 833, 834 (5th Cir. 2011) (applying same rule) (citing <u>Giesberg</u>, 288 F.3d at 268); <u>Crutcher v. Cockrell</u>, 301 F.3d 656 (5th Cir. 2002); <u>Hoffman v. Louisiana</u>, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), <u>cert. denied</u>, 531 U.S. 946 (2000).

On December 18, 2000, Benn submitted an application for post-conviction relief to the state trial court in which he asserted eleven (11) grounds for relief:[15] (1) The state trial court lacked jurisdiction because of a defective indictment. (2) The grand jury selection process was racially biased. (3) The grand jury foreperson was selected before empaneling of the grand jury itself. (4) Evidence was obtained by an illegal search and seizure. (5) He was denied due process by the State's failure to preserve evidence favorable to the defense. (6) The prosecutor injected his personal beliefs into his opening statement, which confused the jury. (7) The prosecutor made false statements about the facts in the opening statement and closing argument. (8) The State withheld evidence favorable to the defense when it failed to provide the defense with the victim's shirt, the

---

[15]St. Rec. Vol. 4 of 5, Uniform Application for Post Conviction Relief, 12/29/00 (dated 12/18/00).

grand jury testimony of their witnesses, the location of the blood spatters, and Chad Lee's statement to police. (9) The prosecutor relied on false testimony. (10) The trial court gave erroneous jury instructions on specific intent, the definition of aggressor, the definition of self-defense and the inferences to be drawn from circumstances. (11) His trial counsel was ineffective because he failed to (a) investigate and interview witnesses before trial, (b) pursue additional discovery, (c) preserve and test evidence, (d) request and inspect the grand jury testimony to use for impeachment, (e) object to the prosecutor's errors, (f) properly argue the motion to suppress evidence and (g) object to the trial court's lack of jurisdiction.

The State responded to Benn's application on January 8, 2001, by denying each of his contentions.[16]  One year later, on January 17, 2002, Benn inquired of the state trial court about the status of his application and was provided copies of the court's briefing order and the State's answer.[17]  More than a year later, on May 12, 2003, Benn appeared before the state trial court on a motion for production of the district attorney's records and was informed by the state trial court that his application for post-conviction relief had been denied in 2001.[18]

---

[16]St. Rec. Vol. 5 of 5, Trial Court Order, 1/8/01; State's Answer, 8/21/01.

[17]St. Rec. Vol. 5 of 5, Letter for Update, 1/7/02; Letter from Clerk of Court, 1/7/02.

[18]St. Rec. Vol. 1 of 5, Minute Entry, 5/12/03; St. Rec. Vol. 5 of 5, Hearing Transcript, 5/12/03; Motion for Production, 4/17/03.

At a follow-up hearing on the document production on July 14, 2003, the state trial court corrected the record to reflect that Benn's 2001 application for post-conviction relief was still pending and would be continued without date to allow Benn to obtain copies of certain lab reports and have testing done on the victim's shirt.[19]

On July 26, 2005, Benn filed a motion for post-judgment acquittal on grounds that he was still not able to obtain test results on the victim's shirts.[20] The state trial court denied the motion without stated reasons on August 1, 2005.[21] Shortly thereafter, the court denied Benn's request for a status conference on his pending application for post-conviction relief.[22]

Almost 18 months later, on February 12, 2007, counsel enrolled on Benn's behalf in connection with the pending application for post-conviction relief.[23] Following almost 34 months of subsequent continuances, on March 24, 2009, the state trial court ordered

---

[19]St. Rec. Vol. 1 of 5, Minute Entry, 7/14/03; St. Rec. Vol. 5 of 5, Hearing Transcript, 7/14/03; Letter from Clerk of Court (confirming there was no ruling on the application for post-conviction relief), 7/23/03; 5th Cir. Order, 03-KH-879, 8/19/03; St. Rec. Vol. 1 of 5, 5th Cir. Writ Application, 03-KH-879 (Benn complained that he was denied a copy of the trial court's ruling on his application for post-conviction relief), 7/23/03.

[20]St. Rec. Vol. 5 of 5, Motion for Post-Verdict Acquittal, 7/26/05.

[21]St. Rec. Vol. 5 of 5, Trial Court Order, 8/1/05.

[22]St. Rec. Vol. 5 of 5, Motion for Status Conference, 9/8/05; Trial Court Order, 9/12/05.

[23]St. Rec. Vol. 5 of 5, Motion to Enroll, 3/12/07; St. Rec. Vol. 1 of 5, Minute Entry, 2/12/07.

that a hearing be held on the eleven claims raised in Benn's December 29, 2000 original application for post-conviction relief.[24]

Benn's counsel thereafter was granted leave on April 9, 2009, to amend the application for post-conviction relief to pursue only the following two claims:[25] (1) The State withheld the victim's clothing, which contained a hole and lead residue tending to show that Clark's gun – not Benn's – fired the fatal bullet. (2) Counsel provided ineffective assistance at trial when he failed to (a) investigate; (b) make trial objections; (c) investigate the witness statements of Chad Lee, Darren Jackson and Antoinette Nicholas and Chad Lee's grand jury testimony related to the self-defense theory; (d) investigate the statements of Andrew Moore and Macon Clark to establish that there were more shooters at the scene of the murder; (e) pursue further discovery without having all of the witness statements; (f) fully argue the motion to suppress the evidence; and (g) object to the prosecutor's misstatement during closing argument that shell casings were seized from Benn's car.

The state trial court held an evidentiary hearing on December 14, 2009, to address these two remaining claims.[26]  At the hearing, the court made clear in discussion with

---

[24]St. Rec. Vol. 5 of 5, Trial Court Order, 3/24/09.

[25]St. Rec. Vol. 5 of 5, Uniform Application for Post-Conviction Relief, 12/11/09; Motion for Leave of Court to File an Application for Post-Conviction Relief, 4/9/09; Trial Court Order, 4/9/09.

[26]St. Rec. Vol. 1 of 5, Minute Entry, 12/14/09; St. Rec. Vol. 5 of 5, Hearing Transcript, pp. 5-9, 12/14/09.

counsel that claims 1, 2, 3, 4, 6, 7, 9 and 10 in the original application were being waived. Counsel acknowledged the waiver of each of those claims and further confirmed that the issues remaining from claims 5, 8 and 11 were now incorporated in the two amended claims, leaving only those two claims for resolution by the court. The state trial court then heard the testimony of Benn and his brother, Eugene Banks.[27] The record indicates that Benn's trial counsel, Willie Turk, was deceased at the time of the hearing.[28]

On January 13, 2010, the state trial court issued a written ruling denying Benn's application.[29] The court found that Benn was not denied due process or prejudiced by the failure to test the victim's clothing before trial because the test results were cumulative of the coroner's testimony. The court also addressed each aspect of the ineffective assistance of counsel claim and found that Benn failed to meet his burden under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and related case law.

On February 12, 2010, Benn's counsel filed a notice of intent to seek review of the court's order, and the court set a return date of November 3, 2010.[30] Thereafter, on October 11, 2010, Benn filed a motion for an evidentiary hearing on all of the eleven

---

[27]St. Rec. Vol. 5 of 5, Hearing Transcript, pp. 14-20 (Banks), 21-22 (Benn), 12/14/09.

[28]Id., at p. 31.

[29]St. Rec. Vol. 5 of 5, Trial Court Ruling, 1/13/10.

[30]St. Rec. Vol. 5 of 5, Notice of Intent, 2/12/10.

claims raised in his original application for post-conviction relief filed in 2000.[31]  The state trial court denied the motion without stated reasons.[32]

On November 3, 2010, Benn's counsel filed a writ application in the Louisiana Fifth Circuit seeking review of the state trial court's January 13, 2010, ruling on the application for post-conviction relief.[33]  The court denied the application on January 10, 2011, finding that the application for post-conviction relief was untimely filed under La. Code Crim. P. 930.8.[34]  The appellate court refused Benn's request for rehearing on September 22, 2011.[35]

In the meantime, on January 25, 2011, Benn filed a motion for a stay in the Louisiana Fifth Circuit based on his claim that he never intended to waive seven of the claims in the original application for post-conviction relief that were not addressed by the state trial court.[36]  In its decision issued March 16, 2011, the Louisiana Fifth Circuit denied the application based on counsel's clear waiver of the claims at the evidentiary

---

[31]St. Rec. Vol. 5 of 5, Motion for Full and Complete Evidentiary Hearing, 10/11/10.

[32]St. Rec. Vol. 5 of 5, Trial Court Order, 10/11/10.

[33]St. Rec. Vol. 1 of 5, 5th Cir. Writ Application, 10-KH-952, 11/3/10.

[34]St. Rec. Vol. 5 of 5, 5th Cir. Order, 10-KH-952, 1/10/11.

[35]St. Rec. Vol. 1 of 5, 5th Cir. Letter, 10-KH-952, 2/22/11.

[36]St. Rec. Vol. 1 of 5, 5th Cir. Writ Application, 11-KH-67, 1/25/11.  The record does not contain a copy of this writ application.  The filing date appears on the face of the related order.

hearing at which Benn was in attendance.[37]  Benn sought review of this ruling in the Louisiana Supreme Court, and his application was denied without stated reasons on February 17, 2012.[38]

While that matter was pending, Benn filed a second request for rehearing in the Louisiana Fifth Circuit in connection with that court's January 10, 2011, ruling that his application for post-conviction relief was untimely filed under La. Code Crim. P. art. 930.8.[39]  This second request also was refused by the appellate court on September 28, 2011, as procedurally improper.[40]

Benn thereafter submitted a writ application to the Louisiana Supreme Court on October 24, 2011, seeking review of the lower courts' rulings on his application for post-conviction relief.[41]  On June 22, 2012, the supreme court granted the application, but ultimately denied relief.  While the court held that the Louisiana Fifth Circuit erred in

---

[37]St. Rec. Vol. 1 of 5, 5th Cir. Order, 11-KH-67, 5/16/11.

[38]State ex rel. Benn v. State, 82 So.3d 279 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KH-0824, 2/17/12; La. S. Ct. Letter, 2011-KH-824, 4/26/11 (showing postal meter of 4/18/11); St. Rec. Vol. 1 of 5, La. S. Ct. Writ Application, 11-KH-824, 4/26/11 (postal metered 4/18/11).

[39]The record does not contain a copy of this second request for rehearing, nor is there any indication as to when it was filed with the Louisiana Fifth Circuit.

[40]St. Rec. Vol. 2 of 5, 5th Cir. Order, 10-KH-952, 9/28/11; 5th Cir. Letter, 10-KH-952, 9/28/11.

[41]St. Rec. Vol. 2 of 5, La. S. Ct. Writ Application, 11-KH-2418, 11/2/11 (dated 10/24/11).

finding his application for post-conviction relief time barred, it also held that Benn failed to establish an error in the state trial court's denial of relief on his meritless claims.[42]

## II.     FEDERAL HABEAS PETITION

On August 24, 2012, the clerk of this court filed Benn's petition for federal habeas corpus relief in which he raised two claims for relief:[43] (1) He was denied due process through the withholding of evidence, the victim's shirt, which was favorable to the defense. (2) He was denied effective assistance of counsel because his counsel did not investigate the victim's clothing before trial. In his supporting memorandum, Benn expanded the ineffective assistance of counsel claim to include allegations that his counsel failed to investigate in a manner sufficient to expose contradictory statements made by certain witnesses and failed to correct material misstatements by the prosecutor about the evidence seized from his car.

The State filed an answer and memorandum in opposition to Benn's petition, arguing that the petition was untimely filed.[44] Alternatively, the State argues that Benn's claims are meritless.

---

[42]State ex rel. Benn v. State, 90 So.3d 1045 (La. 2012); St. Rec. Vol. 2 of 5, La. S. Ct. Order, 2011-KH-2418, 6/22/12.

[43]Rec. Doc. No. 1.

[44]Rec. Doc. Nos. 9, 10.

III.    <u>MOTION TO AMEND OR SUPPLEMENT AND STAY THE PETITION</u>

Benn filed a motion for leave to amend or supplement his petition to include an additional unspecified claim based on new evidence which he contends would have raised reasonable doubt and changed the outcome of his state court criminal case.[45]  He has attached the affidavits of Macon Clark and Aaron Gant, respectively dated December 13, 2011 and June 27, 2012, which he intends to present to the state courts as support for his new claim, which he has not previously asserted in the state courts.[46]  Benn also requests that his federal petition be stayed and held in abeyance pending exhaustion of his state court remedies.

In its memorandum in opposition to the motion, the State argues that Benn has failed to show good cause for his failure to exhaust state remedies on this new claim before proceeding with his federal petition.[47]  The State points out that both affidavits predate the filing of this federal petition, and Benn has not provided any information as to when he was made aware of or received the affidavits.[48]  The State further argues that

---

[45]Rec. Doc. No. 7.

[46]Rec. Doc. No. 7-1.

[47]Rec. Doc. No. 11.

[48]I note that the State erroneously indicates that Gant's affidavit is dated "June 27, 2011." Rec Doc. No. 11, p. 2.  It is actually dated June 27, 2012.  Rec. Doc. No. 7-1, p.4.

the proposed new claim would be meritless in light of the evidence adduced at Benn's trial, and the motion to amend should therefore be denied.

In addition, the State contends that Benn's new claim does not relate back to the filing of the original federal petition, citing <u>Mayle v. Felix</u>, 545 U.S. 644 (2005). The State reiterates its earlier argument that the original petition is not timely filed under federal law. Based on this and the holding in <u>Mayle</u>, the State urges that Benn's new claim is not timely submitted within the one-year AEDPA limitations period.

My review of the state court records reflects that Benn has exhausted the two issues appearing in his original federal petition. Benn concedes, however, that his new claim based on the affidavits was <u>not</u> presented to any state court before the filing of this motion to amend, although he indicated that he plans to do so.

Rule 11 of the Rules Governing Section 2254 Cases permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules." <u>Mayle</u>, 545 U.S. at 654 (quoting Rule 11); Fed. Rule Civ. P. 81(a)(4)(A). 28 U.S.C. § 2242 specifically provides that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions." A court may utilize the provisions of Fed. R. Civ. P. 15 when considering a motion to amend a habeas petition. <u>Mayle</u>, 545 U.S. at 655.

The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting amendment of pleadings, and Rule 15(a) evinces a bias in favor of granting leave to amend. Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial. Stripling v. Jordan Prod. Co., 234 F.3d 863, 872 (5th Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994); Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co., 195 F.3d 765, 770 (5th Cir. 1999); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-98 (5th Cir. 1981)). Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but such leave "is by no means automatic." Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." Id. Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted." Stripling, 234 F.3d at 873 (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 F. App'x 366, 367 (5th Cir. 2010).

Weighing these factors in this case weighs in favor of denying the motion to amend. Benn seeks to amend his federal petition to add a new claim based on two

affidavits, both of which predate the filing of his federal petition. Benn admits that his

new claim was not presented to or exhausted through the state courts before seeking to

present the claim for the first time in this court. By simultaneously seeking a stay of the

proceedings in this court, he necessarily seeks delay.

"Section 2254(b) requires that prisoners must ordinarily exhaust state court

remedies before filing for federal habeas relief." Cullen v. Pinholster, __ U.S. __, 131

S. Ct. 1388, 1399 (2011); Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) ("A

fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all

claims in state court prior to requesting federal collateral relief.") (citing Rose v. Lundy,

455 U.S. 509, 519-20 (1982)); Nobles v. Johnson, 127 F.3d 409, 419 (5th Cir. 1997).

The Supreme Court has consistently interpreted Section 2254 to require a federal habeas

petitioner to complete exhaustion before seeking federal relief in order to promote

"'comity, finality, and federalism,' by giving state courts 'the first opportunity to review

[the] claim,' and to 'correct' any 'constitutional violation in the first instance.'" (citations

omitted) Carey v. Saffold, 536 U.S. 214, 220 (2002) (quoting Williams v. Taylor, 529

U.S. 420, 436 (2000) and O'Sullivan v. Boerckel, 526 U.S. 838, 844-845 (1999)); Cullen,

131 S. Ct. at 1401; Jiminez v. Quarterman, 555 U.S. 113, 121 (2009). For this reason,

the Supreme Court also provides that petitions containing unexhausted claims and mixed

petitions containing both exhausted and unexhausted claims be dismissed to require

complete exhaustion. <u>Pliler v. Ford</u>, 542 U.S. 225, 233 (2004); <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20). To achieve these goals, 28 U.S.C. § 2254(b)(1)(A) does <u>not</u> allow a federal court to grant relief on a habeas claim unless the petitioner has exhausted state court remedies. <u>Cullen</u>, 131 S. Ct. at 1398. Under 28 U.S.C. § 2254(b)(2), this court may address an <u>un</u>exhausted claim only if it is to be "denied on the merits."

Under these circumstances, Benn's proposed amendment to assert an unexhausted new claim cannot be permitted. There has been no previous failure to cure pleading deficiencies by previous amendments, and I perceive no prejudice to defendant in allowing it. These are both factors that balance in favor of permitting the amendment. However, all other Rule 15 factors weigh against granting leave to amend. The fact that the affidavits on which the new claim is based are old and pre-date this federal petition, especially when coupled with plaintiff's request for a stay and his failure first to present the new claim to any state court, all indicate undue delay, bad faith and dilatory motive. Most significantly, however, since plaintiff has <u>not</u> exhausted or even commenced his state court remedies, this court can<u>not</u> grant relief. Thus, permitting the amendment to assert the unexhausted new claim would be futile. Because the Rule 15 factors balance against granting leave, the motion to amend is denied.

Having reached this conclusion, there is no reason to delay consideration of the claims asserted in the original petition, and Benn's motion to stay must also be denied. In Pliler v. Ford, 542 U.S. 225, 227 (2004), the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. Id. The Pliler Court ultimately reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion. Id. at 233. The Supreme Court recognized that a petitioner has two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court. Id.

The Supreme Court later held that stay-and-abeyance was an extraordinary remedy not to be made readily available to a habeas petitioner. Rhines v. Weber, 544 U.S. 269, 278 (2005). The Rhines Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. Id. at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." Id.

In this case, Benn did not originally present this court with a mixed petition. I have denied his request to amend the petition to add the new claim which would have

made this a mixed petition. The two claims asserted in his original habeas petition have been exhausted, and exhaustion on those issues is not challenged by the State. This distinguishes Benn's petition from the type of mixed petition addressed in <u>Pliler</u>/<u>Rhines</u>.

In addition, Benn has not established good cause for this court to enter a stay while he attempts to exhaust the new claim, which he could have done before filing his federal petition. As noted above, both affidavits presented by Benn <u>pre</u>-date the submission of his federal petition. The affidavit from Clark is dated December 13, 2011, while he still had two Louisiana Supreme Court writ applications pending. There is no indication in the record that he ever brought the affidavit to the state courts' attention.

As the State points out, Benn has not indicated when he received these affidavits or why the information could not have been obtained earlier with due diligence. Nevertheless, federal law requires that Benn must give the state courts the first opportunity to consider the new claim and this allegedly new evidence. <u>Cullen</u>, 131 S. Ct. at 1401.

A stay to allow completion of exhaustion must be limited to instances in which good cause is shown for the failure fully to exhaust, <u>Rhines</u>, 544 U.S. at 278, and this is not such a case. Benn has failed to show any good cause or any sound basis to issue a stay in this case. His motion to stay should be denied.

IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[49] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Benn's petition, which, for reasons discussed below, is deemed filed in this

court on August 2, 2012.[50]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

---

[49]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[50]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Benn's petition was filed by the clerk of court on August 24, 2012, when the filing fee was received. Benn failed to sign or date the application and memorandum when it was first received by the clerk of court on August 6, 2012.  He eventually dated and signed the form petition on August 14, 2012, at the request of the clerk of court. The only available submission date in the record is August 2, 2012, which is the postmark on the envelope in which he first mailed the pleadings to the court. This is the earliest date appearing in the record on which he could have delivered the petition to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Benn's petition is not timely filed, but concedes that the claims are exhausted. The timeliness calculation contained in the State's response is erroneous in several respects. The conviction finality date is incorrect. The mailbox rule has not been applied to Benn's state court pleadings. Tolling of the limitations period during the pendency of the trial and appellate courts' rulings has not been included, even though Benn timely sought review at each next appellate step. These errors render the State's time bar argument unacceptable.

While there is some possibility that the petition may not be timely filed, I cannot accept this defense in light of the record as presented and considering matters which have not been addressed by the State. By my calculation, it is possible that Benn is untimely in this court by as little as two (2) days. His failure to date his federal petition leaves only the postmark date of August 2, 2012 to consider as the filing date under the mailbox rule. However, the postmark date is not necessarily the appropriate date under the federal mailbox rule. In addition, many of the state court pleadings bear only filing and post-mark dates and no signature date. Benn rarely dated his state court pleadings, and the record does not contain sufficient information to determine a date on which he may have

delivered the pleadings to prison officials for mailing as required under the mailbox rule. While I do not condone a prisoner's intentional failure to date his pleadings to circumvent the limitations requirement, I must find that the record as presented does not contain sufficient information to conclude with confidence that Benn's petition is untimely. For the following reasons, I will assume that the petition was timely filed in this court.

Specifically, the one-year AEDPA statute of limitations period began to run in Benn's case on January 25, 2000, the day after his conviction became final after denial of his petition for writ of certiorari by the United States Supreme Court. 28 U.S.C. §2244(d)(1)(A). The AEDPA statute of limitations period ran without interruption for 328 days, until December 18, 2011, when Benn signed and submitted an application for post-conviction relief to the state trial court. When it was denied on January 13, 2010, Benn's counsel timely filed a writ application in the Louisiana Fifth Circuit on November 3, 2010, which was denied by that court on January 10, 2011. Benn twice filed for rehearing in that court. Those requests were denied on February 22 and September 28, 2011. The State did not provide copies of these rehearing applications to determine their timeliness or submission dates under the applicable mailbox rule.

In addition, while pursuing this relief, Benn sought other collateral review in the form of a motions in the state trial court and the Louisiana Fifth Circuit attempting to

revive the post-conviction claims waived by his counsel. The Louisiana Fifth Circuit application concerning this issue was filed on January 25, 2011, during the pendency of the review of denial of Benn's post-conviction claims. The submission date of that writ application is not apparent from the record. When the appellate court denied the motion, finding that the claims were waived, Benn immediately sought review of that order in the Louisiana Supreme Court. That writ application remained pending from at least April 18, 2011, when it was postmarked, through its denial on February 17, 2012.

The pendency of that proceeding overlapped Benn's questionable pursuit of a rehearing in the other proceeding mentioned above. It also overlapped with his submission for review in the Louisiana Supreme Court after refusal of his second request for rehearing. That writ application remained pending from October 24, 2011, when it was postmarked through June 22, 2012, when it was denied. At that time, Benn had only 37 days, or until July 30, 2012,[51] to submit his federal petition to this court. The petition was postmarked on August 2, 2012, which was two days too late, but it is unclear whether he had in fact delivered the petition to prison officials for mailing two days earlier.

Under these circumstances, given the potential variance between the postmark dates and the submission dates under the mailbox rule, I cannot conclude with confidence

---

[51]The 37th day was actually Sunday, July 29, 2012, leaving the deadline to fall on the next business day, Monday, July 30, 2012.

that Benn's petition was not timely filed in this court. Accordingly, I will address the

merits of Benn's claims.

V.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions

of fact, questions of law and mixed questions of fact and law in federal habeas corpus

proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be

correct . . . and we will give deference to the state court's decision unless it 'was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    ALLEGEDLY WITHHELD EVIDENCE (CLAIM NO. 1)

Benn alleges that the State withheld evidence from the defense when it failed to have the victim's shirt tested to establish the shape of the bullet hole and angle at which the bullet traveled, which he argues would have exonerated him.

Benn raised these claims in his state court application for post-conviction relief, as amended by his retained post-conviction counsel. During the post-conviction process, the state trial court had the State conduct testing and analysis on all of the victim's clothing retrieved from the hospital after the shooting, including the shirts he was wearing.[52]  The report included the following results:[53]

> Lead residues consistent with bullet wipe were detected on the margins of the bullet hole in the left sleeve of the white T-shirt (exhibit 14A) and a corresponding area on the long sleeved shirt (exhibit 14B).
> No gun powder particles were detected adjacent to the "bullet holes" in the left sleeve of the two shirts (exhibits 14A&B), or in the gleanings from these shirts and the hand towel (exhibits 14A-C).

After the post-conviction hearing on December 14, 2009, the state trial court denied relief on Benn's claim, finding that he failed to show a reasonable probability that the result of trial would have been different, citing state law derivative of Brady v. Maryland, 373 U.S. 83 (1963), discussed below. The court held that if this testing had been done before trial, it would only have shown that the holes in the clothes were

---

[52]St. Rec. Vol. 5 of 5, Hearing Transcript, p. 7, 5/12/03; Scientific Analysis Report, 11/30/06; St. Rec. Vol. 1 of 5, Minute Entry, 5/12/03.

[53]St. Rec. Vol. 5 of 5, Scientific Analysis Report, 11/30/06.

consistent with where the bullet entered the victim's body. The location and angle of entry of the bullet at the wound were presented to the jury through Dr. Paul McGarry's testimony. The court also noted that the report confirmed the lack of gunpowder found on the victim's body, since none was found on the clothing. The court deemed the information cumulative and consistent with what was presented to the jury. The Louisiana Supreme Court also denied relief when it found no error in this ruling on its review of the merits on June 22, 2012.

The <u>Brady</u> materiality determination is a mixed question of law and fact. <u>Cobb v. Thaler</u>, 682 F.3d 364, 377 (5th Cir. 2012). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In <u>Brady</u>, the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u>, 373 U.S. at 87; <u>Youngblood v. West Virginia</u>, 547 U.S. 867, 869-70 (2006). Three factors must be considered to evaluate an alleged <u>Brady</u> violation: (1) The evidence at issue must be material, in that it is favorable to the accused, either because it is exculpatory or because it is impeaching. (2) The evidence must have been suppressed by the State, either willfully or inadvertently. (3) Prejudice must have

resulted from the suppression. Banks v. Dretke, 540 U.S. 668, 691 (2004) (quoting

Strickler v. Greene, 527 U.S. 263, 281-82 (1999)); DiLosa v. Cain, 279 F.3d 259, 262

(5th Cir. 2002) (citing United States v. Bagley, 473 U.S. 667, 674-76 (1985)); Matthew

v. Johnson, 201 F.3d 353, 360 (5th Cir. 2000) (citing Brady, 373 U.S. at 87).

As to the first factor, evidence is material under Brady "if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different." Kyles, 514 U.S. at 433. A "reasonable

probability" under Brady is a probability sufficient to undermine confidence in the

outcome. Id., 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678). The United States Fifth

Circuit has outlined four factors used to determine materiality under Brady and Kyles:

> The Kyles decision emphasizes four aspects of materiality. First, "a
> showing of materiality does not require demonstration by a preponderance
> that disclosure of the suppressed evidence would have resulted ultimately
> in the defendant's acquittal (whether based on the presence of reasonable
> doubt or acceptance of an explanation for the crime that does not inculpate
> the defendant)." 514 U.S. at 434, 115 S.Ct. 1555. The question is not
> whether the defendant would have received a different verdict with the
> disclosed evidence, but "whether in its absence he received a fair trial,
> understood as a trial resulting in a verdict worthy of confidence." Id. A
> "reasonable probability of a different result" is shown when the suppression
> "undermines confidence in the outcome of the trial." Id.
>
> Second, the materiality test is not a test of the sufficiency of the
> evidence. The defendant need not demonstrate that after discounting the
> inculpatory evidence by the undisclosed evidence that there would not have
> been enough evidence to sustain the conviction. Rather, a Brady violation
> is established by showing "that the favorable evidence could reasonably be
> taken to put the whole case in such a different light as to undermine
> confidence in the verdict." Id. at 435, 115 S.Ct. 1555. Third, harmless

error analysis does not apply. Id. Fourth, "materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item by item." Id. at 436, 115 S.Ct. 1555.

Graves v. Dretke, 442 F.3d 334, 339-40 (5th Cir. 2006); Kyles, 514 U.S. at 433-44.

Brady claims include "'the discovery of evidence after trial of information which had been known to the prosecution but unknown to the defense.'" Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)) (emphasis added). However, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim." United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980). Brady does not place any burden on the prosecution to conduct a defendant's investigation or assist in the presentation of the defense. United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997) (the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence); Bigby v. Cockrell, 340 F.3d 259, 279 (5th Cir. 2003); Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002). In addition, information is not material under Brady if it is merely cumulative of other evidence already before the fact finder. Spence v. Johnson, 80 F.3d 989, 995 (5th Cir. 1996).

Before considering the findings of the state courts, I question whether Benn's claim presents the type of evidence protected under Brady. As noted above, Brady addresses evidence known to the prosecution that is not discovered by the defense until after trial. Lawrence, 42 F.3d at 257. When the evidence is otherwise available to the defense at the time of trial, there is no Brady claim. Brown, 628 F.2d at 473.

The state court record establishes that Benn's counsel knew at trial that the clothes had not been examined or tested by the coroner. He specifically asked that question to the coroner at trial.[54] Benn acknowledged that the clothes had not been tested when he argued that very point to the Louisiana Supreme Court in his writ application filed after his direct appeal in 1999.[55] The existence of untested clothing was not discovered by the defense after trial; that fact was known during trial.

In addition, Benn has not argued that the clothes were unavailable to the defense or were specifically withheld by the State. His counsel conceded this point in the post-conviction hearing when he attempted to re-frame the issue as part of the ineffective assistance of counsel claim.[56] Benn's claim is based instead on the fact that the clothes were not tested by the State for other evidence. The law, however, does not require the State to conduct the defense's case. Marrero, 904 F.2d at 261; Rector, 120 F.3d at 558-

---

[54]St. Rec. Vol. 3 of 5, Trial Transcript, p. 36, 9/11/96.

[55]St. Rec. Vol. 2 of 3, La. S. Ct. Writ Application, 99-KO-0191, 1/22/99 (postmarked 1/12/99).

[56]St. Rec. Vol. 5 of 5, Hearing Transcript, pp. 9-11, 12/14/09.

59. I am convinced that this is not a <u>Brady</u> issue. Nevertheless, I will consider the claim under <u>Brady</u> as it was addressed by the state courts.

A successful <u>Brady</u> claim must establish that, had the evidence been available to the defense, there is a "reasonable probability of a different result" that "undermines confidence in the outcome of the trial." <u>Kyles</u>, 514 U.S. at 434. Benn has not made such a showing of prejudice.

Benn's argument is based on his supposition that evidence retrieved from the shirt would have established that the victim was shot not by Benn but by Clark, who was standing sufficiently near the victim to have left gunpowder residue and at the correct angle to have allowed the bullet to travel into the victim from the left side. As recognized by the state trial court, the results of the clothing analysis established that lead residue consistent with a "bullet wipe" was detected on the edges of the bullet holes in the shirt and undershirt and that the holes corresponded with each other.[57] The report indicates that no gunpowder was found on any of the victim's clothing.

Essentially, the report indicated nothing more than that a bullet traveled through the left sleeves of the victim's shirt and undershirt. The report does not support Benn's suggestion that gunpowder would be present to establish a close range shot. The report also offered no additional evidence about the angle at which the bullet entered the

---

[57]St. Rec. Vol. 5 of 5, Scientific Analysis Report, 11/30/06.

victim's arm and abdomen. It certainly did not establish that Benn was on the victim's front or right side (and the alleged other shooter to his left) when the bullet entered the victim's arm.

Contrary to Benn's arguments, nothing in the report or the testimony at the post-conviction hearing established that he was not at an angle from which he could have shot the victim. The witness Eugene Banks confirmed the trial testimony that Benn was across the street and Lee "was facing him" when the shooting started.[58] Banks even confirmed the accuracy of the map of the scene and locations of the people drawn by the investigating officer.[59] No one at the hearing or at trial testified that they actually saw the victim after the shooting started or saw when he was struck by the fatal bullet.

The only evidence of the angle of the bullet entry was from the trial testimony of Dr. McGarry.[60] He testified that the 9mm bullet went through the front flesh of the victim's left arm into the left side of his chest, through the left lung, through the aorta and spine, and then came to rest in the upper right side of his back, where it was found during the autopsy.[61] Dr. McGarry specified that the bullet entered the victim's arm 5.5 inches below his shoulder top, went straight into the chest, and traveled through his body at a

---

[58]St. Rec. Vol. 5 of 5, Hearing Transcript, p.15, 12/14/09.

[59]Id., p. 16.

[60]St. Rec. Vol. 3 of 5, Trial Transcript, 9/11/96.

[61]Id., pp. 33, 34.

"slightly upward" angle.[62]  The record indicates that he and defense counsel physically demonstrated for the jury exactly what he described and what he meant by "slightly upward."  Dr. McGarry also testified that he found no traces of gunpowder as he would expect to find in a close range shot.[63]

The jury heard and saw exactly what Dr. McGarry described as the bullet's angle of entry and travel.  Nothing in the 2006 lab report contradicts, contributes to or is descriptive of the bullet's trajectory. The jury heard the testimony that Clark and Benn were both shooting.  They heard testimony concerning where each of the witnesses placed the shooters in relation to each other and in relation to the victim.  Nothing in the 2006 report contradicts any of this testimony.  At best, the report is consistent with and cumulative of Dr. McGarry's testimony that the bullet passed through Lee's left arm and that there was a lack of gunpowder at the site to indicate a close range shot.  This cumulative evidence does not give rise to a Brady claim.

Benn has failed to establish how his trial was rendered unfair or that a reasonable probability exists that the outcome of the trial would have been different if he had the test results on the victim's clothes before trial.  Benn has not shown that the state courts'

_____

[62]Id., p. 34.

[63]Id., p. 36.

denial of relief on this issue was contrary to or an unreasonable application of Supreme

Court precedent. Benn is not entitled to relief on this claim.

VII.     INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 2)

Benn argues that he was denied effective assistance of trial counsel when his

lawyer did not have the victim's clothing tested before trial, failed to investigate the case

in a manner sufficient to expose prior contradictory statements made by certain

witnesses, and failed to correct material misstatements by the prosecutor about evidence

seized from his car.

In addressing the claim of ineffective assistance of counsel on post-conviction

review, the state trial court found that counsel's performance was constitutionally

sufficient under the Strickland standard and related federal and state law. In relevant

part, the court resolved that Benn's allegations of failure to investigate were conclusory

and that the limited testimony presented at the post-conviction evidentiary hearing failed

to support that claim. The court also found that Benn failed to prove that his trial counsel

was actually aware of the prior witness statements and failed to request them from the

State through discovery. The court also found that Benn failed to show prejudice

resulting from counsel's actions. The court further concluded that Benn failed to establish

prejudice as a result of his counsel's failure to object to any prosecutor's misstatement

of the evidence in his closing remarks. The Louisiana Supreme Court also found that Benn failed to carry his burden of proof under Strickland and related state law.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, relief upon by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct

more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788. The Harrington Court

went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

This court therefore must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector, 120 F.3d at 564) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

Benn's first assertion is that his counsel was ineffective when he failed to have the victim's clothing tested before trial to locate the existence of gunpowder and the angle of entry of the bullet to show that Clark was the fatal shooter. I have already discussed Benn's related claim under the standards of <u>Brady</u>. He did not lose the ability to test the shirt or other clothing, since the clothing was part of the retained evidence and was in fact tested as part of Benn's post-conviction proceedings. As did the state courts, I have concluded that there was no constitutional error arising from the failure to have the clothing tested before trial and that the 2006 lab report did not provide the information Benn thought it would provide.

Instead, the report was duplicative of some of the trial testimony provided by Dr. McGarry. Both concluded that there was no gunpowder on the victim's shirt to indicate that a closer shooter caused the injury, and the bullet wipe marked the hole through which the bullet penetrated the victim's arm. There was no angle or trajectory information and nothing to contradict or further explain Dr. McGarry's trial testimony. Essentially, any relevant information obtained from the shirt was already before the jury. There was nothing in the report that was beneficial to the defense.

Benn has not established that, but for counsel's performance, a substantial likelihood exists that the verdict would have been different. Benn therefore has not proven prejudice arising from his counsel's failure to have the victim's clothing tested

before trial. The state courts' denial of relief on this issue is not contrary to or an unreasonable application of <u>Strickland</u>. He is not entitled to relief on this claim.

Benn next asserts that his counsel was ineffective when he failed to discover and use prior grand jury testimony or other statements made by certain witnesses. He specifically references the statements of Chad Lee, Darren Jackson and Antoinette Nicholas provided to investigating officers before trial and Chad Lee's grand jury testimony. He claims that each of these statements establishes that Clark shot at him first. He claims that, because counsel did not investigate these statements, he did not have this information with him at trial to effectively cross-examine Jackson's contradictory trial testimony.

Construed broadly, Benn's argument appears to be that his counsel should have challenged Jackson's trial testimony in which he indicated that Benn initiated the incident and shot at Clark first. The trial transcript demonstrates that counsel's questioning of Jackson was not detrimental to the defense or lacking as an effective challenge to Jackson's credibility.

Jackson was not asked at trial who shot first or who initiated the incident between Benn and Clark. Instead, in describing the incident, Jackson stated simply that he saw Benn come down from the tracks shooting his gun toward the crowd of people in front

of the club.[64]  On cross-examination by defense counsel, Jackson indicated that from his vantage point during the shooting, he could only see that Benn was firing a weapon.[65] In further response to defense counsel, Jackson testified that he could not see where Benn was aiming, nor did he see Benn actually shoot the victim.  In fact, Jackson could not tell defense counsel where Clark (the other shooter and intended target) was standing.[66] Upon further questioning by defense counsel, Jackson conceded that he could not see where the victim was facing because, from where he was positioned, he could not see the victim at all.[67]

Even if Jackson's direct testimony was in some way contrary to a prior statement, the record is clear that Benn's trial counsel took full advantage on cross-examination to diminish and undermine the veracity of Jackson's testimony.  Essentially, Benn's trial counsel was able to garner testimony to establish that Jackson saw nothing, except that Benn fired a gun.  That fact, as Benn points out, was not at issue.

Having reviewed the transcript, Benn has failed to establish that his counsel's performance on cross-examination was deficient or that his failure to locate or use the prior statements of Jackson, Chad Lee and Nicholas caused any prejudice to the defense.

---

[64]St. Rec. Vol. 2 of 5, Trial Transcript, p. 48 (Jackson), 9/10/96.

[65]Id., pp. 50-51.

[66]Id., p. 51.

[67]Id., p. 52.

He has not established that but for counsel's performance, there is a substantial likelihood that the verdict would have been different. Benn has not shown that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

Benn also argues that his counsel was deficient for failure to object or otherwise correct the prosecutor's misstatement during closing argument. He refers to a statement made by the prosecutor about the evidence seized from his car. During trial, Detective Shawn Degnan identified "State Exhibit 5" as "an empty box of .9 millimeter luger shell casings, 115 grain, full metal jackets I found inside Todd Benn's vehicle."[68] The testimony later would reflect that this is the same type of bullet that killed the victim.

During closing arguments, the prosecutor made the following statement to the jury: "The bullets, you have the <u>bullet case</u> found in Todd Benn's car, .9-millimeter, full-metal-jacket bullets."[69] (emphasis added). Contrary to Benn's arguments throughout his post-conviction proceedings, the prosecutor did <u>not</u> call it a "casing," although the transcript reflects the unfortunate use of the word "case" rather than box.

This single misstatement, in the face of numerous correct references to the empty <u>box</u>, did not result in an objection or request for clarification from defense counsel. Of

_____

[68]St. Rec. Vol. 3 of 5, Trial Transcript (continued), p. 34, 9/10/96.

[69]St. Rec. Vol. 3 of 5, Trial Transcript, p. 45, 9/11/96.

course, by its very definition, a case like a box, is defined as a container.[70]  It is possible

that counsel chose not to object to the use of this synonym to avoid a strategically

disfavored interruption of opposing counsel's arguments or because it would have called

too much or unnecessary attention to the error.  Such a decision would have been a

reasonable exercise of tactical judgment under the circumstances.

During rebuttal argument, the prosecutor made another reference to the jury that

arguably was self-correcting on that issue:[71]

> And one (1) other thing that I forgot to tell you on my first closing was,
> don't forgot [sic] the size of the bullet, the full-metal-jacket bullet, the 115
> grain bullet, the same 115 grain bullet that came out of <u>this box that's in
> evidence</u>.

(emphasis added).  By this statement, the jury was provided yet another opportunity to

hear the correct reference to the evidence as an empty box.  The jurors also were allowed

to view all of the trial exhibits and would have seen the empty box for themselves.[72]

As found by the state courts, Benn has not demonstrated any prejudice arising

from his counsel's failure to object to the prosecutor's statement.  The empty box was

---

[70]A box is defined as "a container or receptacle, often rectangular and having a lid or removable cover." <u>The Random House College Dictionary</u>, Revised Ed. 1980, p. 161. A case is defined as "a container for receiving and enclosing something, as for carrying, safekeeping, etc." <u>Id</u>., at 208. The words are similarly defined by Merriam-Webster at <u>http://www.merriam-webster.com/</u>. By this more recent posting, a box is defined no differently as "a rigid typically rectangular container with or without a cover." <u>http://www.merriam-webster.com/dictionary/box</u>.  A case also is defined by Merriam-Webster as "a box or receptacle for holding something" <u>http://www.merriam-webster.com/dictionary/case</u>.

[71]<u>Id</u>., p. 55.

[72]<u>Id</u>., p. 42.

presented to the jury and was correctly referenced throughout other portions of the trial, including the prosecutor's rebuttal argument. The record does not support a finding that this sole reference to a case rather than a box had a substantial impact on the jury's decision or that counsel prejudiced the defense when he did not object to it. Benn has not shown that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Strickland. He is not entitled to relief on this claim.

## ORDER AND RECOMMENDATION

For the foregoing reasons, it is **ORDERED** that Todd Benn's motion to amend (Rec. Doc. No. 7) is **DENIED**.

It is **RECOMMENDED** that Benn's motion to stay (Rec. Doc. No. 7) be **DENIED**.

It is further **RECOMMENDED** that Benn's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[73]

New Orleans, Louisiana, this _____28th_____ day of January, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[73]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.